UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CHRISTOPHER BROWN,

    Petitioner,

    v.      CAUSE NO. 3:23-CV-914-DRL-MGG

WARDEN,

    Respondent.

OPINION AND ORDER

Christopher Brown, by counsel, filed a habeas corpus petition to challenge his conviction for conspiracy to commit robbery resulting in serious bodily injury and robbery resulting in serious bodily injury under Case No. 09C01-1603-F2-6. Following a jury trial, he was sentenced to 80 years of incarceration, but his sentence was reduced to 36 years following direct and post-conviction review. Mr. Brown asserts that his Sixth Amendment rights were violated at a critical stage of the criminal proceedings when the trial court allowed the prosecution to amend the charges at the February 2016 hearing without the presence of trial counsel. He articulates his claim as follows:

> Christopher Brown's claim to federal habeas relief is straightforward. Tried together with a codefendant, Brandon Black, after a mistrial because the jury deadlocked, the State of Indiana moved to amend the charging informations against both to add more serious charges. Both Mr. Brown and Mr. Black had public defenders with appearances on file. At the hearing held by the Indiana trial court on the State's motion to amend the informations to add more serious charges, no lawyer was present for neither Mr. Brown or Mr. Black.
>
> Mr. Brown's case presents the paradigmatic application of *United States v. Cronic*, 466 U.S. 648 (1984). Prejudice must be presumed, *Chronic* says, from

>Mr. Brown's lawyer's absence at the hearing on the State's motion to amend the charging information.

ECF 1 at 1-2.

In support of this claim, Mr. Brown relies on *United States v. Cronic*, 466 U.S. 648 (1984). There, the Supreme Court indicated that the criminal defendant is ordinarily required to demonstrate prejudice in connection with an ineffective assistance of counsel claim. *Id.* at 658. "There are, however, circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.* "Most obvious, of course, is the complete denial of counsel. The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial." *Id.* at 659.

The Indiana Court of Appeals summarized the relevant sequence of events as follows:

>On January 19, 2015, the State charged Brown with conspiracy to commit robbery as a Level 3 felony and battery as a Level 6 felony. The State also alleged Brown was an habitual offender. Following a jury trial in February 2016, the trial court declared a mistrial after the jury deadlocked.
>
>On February 24, 2016, the State filed an amendment to the charging information to include three additional counts against Brown: conspiracy to commit robbery resulting in serious bodily injury as a Level 2 felony ("Count III"), robbery resulting in serious bodily injury as a Level 2 felony ("Count IV"), and battery resulting in serious bodily injury as a Level 5 felony ("Count V"). On February 29, 2016, the trial court held an "Initial hearing" with respect to these new charges. At the hearing, the State informed the trial court that it would move to dismiss the original two counts that had resulted in a mistrial and proceed only on the three new charges. Brown's counsel was not present at the hearing but the trial court entered a plea of not guilty to the new charges on Brown's behalf. The State did not file a motion to dismiss Counts I and II thereafter.

On July 19, 2016, the State filed a new charging information against Brown and Black that included only Counts III-V, now renumbered Counts I-III (hereafter referred to as such), and the habitual offender allegation. Brown did not object.[1] A joint trial commenced the following day. There, the State admitted evidence of the show-up identification and Amin also testified that Brown was one of his assailants. The jury found Brown guilty as charged. The trial court entered judgment of conviction on all counts, but vacated the battery conviction due to double jeopardy concerns. The trial court sentenced Brown to thirty years on both Counts I and III, to be served consecutively. The trial court also enhanced Brown's sentence by twenty years due to his habitual offender status for an aggregate sentence of eighty years in the Indiana Department of Correction.

ECF 7-6 at 5-6; *Brown v. State*, 87 N.E.3d 54 (Ind. Ct. App. 2017).

## TIMELINESS

The Warden argues that the petition is untimely. The statute of limitations for habeas petitions states as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

[1] This sentence requires some clarification. On July 19, 2016, trial counsel objected to the amendments made on that date on the eve of trial but did not object to the amendments made on February 29, 2016. ECF 8-7 at 179.

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Based on review of the petition, the date on which the judgment became final is the applicable starting point for calculating timeliness. Mr. Brown's direct appeal culminated in the Indiana Supreme Court's denial of a petition to transfer on September 26, 2017. ECF 7-2. Therefore, his conviction became final for purposes of 28 U.S.C. § 2244(d)(1)(A) when the time for petitioning the United States Supreme Court for a writ of certiorari expired on December 20, 2017. *See* U.S. Sup. Ct. R. 13(1) (petition for writs of certiorari must filed within 90 days after entry of judgment); *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009) (when a state prisoner does not petition the Supreme Court of the United States on direct appeal, his conviction becomes final when the time for filing a petition expires). Before any time had run, Mr. Brown initiated post-conviction proceedings. ECF 7-10. On December 14, 2020, the Cass Superior Court granted the post-conviction petition and vacated the habitual offender conviction. ECF 7-11. On January 20, 2021, Mr. Brown filed a motion acknowledging the post-conviction order as a final order and asking the Cass Superior Court to send an amended abstract of judgment consistent with the post-conviction order to the Indiana Department of Correction, which was granted the next day. ECF 7-1 at 10; ECF 7-10 at 5; ECF 7-12. On February 12, 2021,

Mr. Brown filed another motion highlighting errors in the amended abstract of judgment and asked the Cass Superior Court to send another amended abstract of judgment to the Indiana Department of Correction, which was granted on the same day. ECF 7-1 at 10; ECF 7-10 at 5; ECF 7-13. On October 21, 2021, Mr. Brown filed a motion for a new sentencing hearing or a new sentencing order, which was granted on October 26, 2021. ECF 7-10 at 6; ECF 7-14.

The parties dispute how long these proceedings remained pending. The pendency of post-convictions is material because 28 U.S.C. § 2244(d)(2) statutorily tolls the limitations period for "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." Mr. Brown asserts that post-conviction proceedings concluded when the Cass Superior Court issued the new sentencing order on October 26, 2021. The Warden responds that they concluded when the Cass Superior Court granted post-conviction relief and vacated the habitual offender enhancement conviction.

"The issue of whether a post-conviction petition is pending for habeas purposes is governed by state law." *Wilson v. Battles*, 302 F.3d 745, 747 (7th Cir. 2002). "For purposes of habeas review, an application for collateral review is pending until it has achieved final resolution through the State's post-conviction procedures." *Id.* Section 6 of Rule 1 of the Indiana Rules of Post-Conviction Remedies, titled "Judgment," states as follows:

> The court shall make specific findings of fact, and conclusions of law on all issues presented, whether or not a hearing is held. If the court finds in favor of the petitioner, it shall enter an appropriate order with respect to the conviction or sentence in the former proceedings, and any supplementary orders as to arraignment, retrial, custody, bail, discharge, correction of

sentence, or other matters that may be necessary and proper. This order is a final judgment.

On this basis, the court finds that the post-conviction petition was no longer pending once the Cass Superior Court issued the order on December 14, 2020.

In that order, the Cass Superior Court resolved the post-conviction petition, and that resolution was not subsequently modified or challenged, rendering it a final resolution. The state post-conviction rules also deemed this order a final judgment as Mr. Brown conceded in one of his post-judgment motions. ECF 7-12. And even in these post-judgment motions, Mr. Brown sought to enforce the December 2020 order rather than to challenge it.

The federal limitations expired one year later on December 14, 2021. Though Mr. Brown initiated further efforts to obtain collateral relief in October 2022 (ECF 7-1 at 11-16), these efforts did not restart the federal limitations period, nor did they "open a new window for federal collateral review." *See De Jesus v. Acevedo*, 567 F.3d 941, 943 (7th Cir. 2009). On October 16, 2023, Mr. Brown initiated this case by filing a habeas petition. ECF 1. Because Mr. Brown filed the petition nearly two years too late, the court dismisses the petition as untimely. Nevertheless, for the sake of completeness, the court will address the merits of his claim.

## STANDARD

"Federal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quotations and citation omitted).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> [This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Woods,* 135 S. Ct. at 1376 (quotations and citations omitted). Criminal defendants are entitled to a fair trial but not a perfect one. *Rose v. Clark*, 478 U.S. 570, 579 (1986). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotations omitted).

## DISCUSSION

Mr. Brown asserts that he is entitled to habeas relief because the trial court violated his Sixth Amendment right to trial counsel by allowing the prosecution to amend the

7

charges at the February 2016 hearing without the presence of trial counsel. On direct appeal, the Indiana Court of Appeals rejected this claim, finding that an initial hearing as held in Indiana is not a critical stage and characterizing the February 2016 hearing as an initial hearing.[2] ECF 7-6 at 6-8. The appellate court noted that the trial court described the hearing as an initial hearing and reviewed the charges, entered Mr. Brown's plea of not guilty, and did not insist on the presence of trial counsel consistent with an initial hearing. *Id.* The appellate court further determined that the hearing was not a critical stage even without reference to its status as an initial hearing because trial counsel's presence was not critical. *Id.* The appellate court reasoned that trial counsel could have raised any objection to the amendments at a later date so Mr. Brown did not suffer prejudice as a result of trial counsel's absence at the hearing. *Id.* The appellate court also determined that the absence of trial counsel would have amounted to harmless error. *Id.* The appellate court reasoned that the amendments were made five months before trial, so trial counsel had ample time to make objections and to prepare a meaningful defense. *Id.*

    A. *Critical Stage of the Proceedings.*

Mr. Brown argues that the state court acted unreasonably by finding that the February 2016 hearing was not a critical stage of the proceedings. "[T]he right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *United States v. Cronic*, 466 U.S.

---

[2] The Indiana Court of Appeals acknowledged that it had found that the February 2016 hearing was not an initial hearing and that it amounted to a critical stage of the proceedings in the direct appeal of Mr. Brown's codefendant, Brandon Black. Though the Indiana Court of Appeals did not elaborate on this discrepancy, this court observes that different three-judge panels presided over the two appeals.

648, 658 (1984). "The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial." *Id.* at 659. However, "[i]ts protections are not designed simply to protect the trial." *Lafler v. Cooper*, 566 U.S. 156, 165 (2012). "The constitutional guarantee applies to pretrial critical stages that are part of the whole course of a criminal proceeding, a proceeding in which defendants cannot be presumed to make critical decisions without counsel's advice." *Id.*

"The Supreme Court has not provided a concise explanation of what constitutes a critical stage." *Schmidt v. Foster*, 911 F.3d 469, 479 (7th Cir. 2018). "Broadly, it has described a critical stage as a step of a criminal proceeding that holds significant consequences for the accused." *Id.* (quoting *Bell v. Cone*, 535 U.S. 685, 696 (2002)). "Alternatively, though still broadly, the Court has said that whether a stage is critical depends on whether, during a particular confrontation, the accused faces prejudice that counsel could help avoid." *Id.* (quoting *United States v. Wade*, 388 U.S. 218, 227 (1967)).

On this point, the court finds *Schmidt v. Foster*, 911 F.3d 469 (7th Cir. 2018), to be particularly instructive. In *Schmidt*, the habeas petitioner argued that the state court erred by finding that an *in camera* examination of a criminal defendant to determine whether there was a sufficient factual basis for an adequate provocation defense during an evidentiary hearing was not a critical stage of the proceedings. *Id.* at 472-73, 480. The Seventh Circuit observed the lack of a precise definition for critical stage and that the Supreme Court had never recognized an *in camera* examination of a criminal defendant or an evidentiary hearing as a critical stage. *Id.* at 479-80. The Seventh Circuit concluded by finding it unnecessary to resolve the issue, but it nevertheless implied that the state

9

court could not have unreasonably applied clearly established federal law under these circumstances. *Id.* at 480. This court is similarly inclined to agree that the state court here could not have acted unreasonably given the absence of a clear definition from the Supreme Court and given the absence of any Supreme Court case holding that a hearing like this one in which trial counsel had ample opportunity to make objections and to prepare for trial is a critical stage of the proceedings.

Mr. Brown maintains that *Brewer v. Williams*, 430 U.S. 387 (1977), and *Rothgery v. Gillespie County*, 554 U.S. 191 (2008), stand for the proposition that the February 2016 hearing was a critical stage of the proceedings. These cases hold that "the right to counsel guaranteed by the Sixth Amendment applies at the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty." *Rothgery*, 554 U.S. at 194. In other words, these cases stand for the proposition that the right to counsel attaches at "the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment;" *id.* at 198, but they do not directly indicate that the first appearance before a judicial officer is a critical stage requiring the presence of counsel. To the contrary, the Supreme Court in *Rothgery* observed that "the overwhelming consensus practice" of the federal and state courts is to appoint counsel "before, at, or *just after* an initial appearance," strongly implying that the presence of counsel is not required at the point where the right to counsel attaches. *See id.* at 203-05 (italics added).

10

Mr. Brown further maintains that in *Jones v. Zatecky*, 917 F.3d 578 (7th Cir. 2019), the Seventh Circuit "has already held that a hearing on the State's late amendments to an Indiana charging information is a critical stage." ECF 1 at 13. In *Jones*, the Seventh Circuit found ineffective assistance of trial counsel when the trial court granted an untimely amendment to the information at a pretrial hearing, and trial counsel did not object, which waived the meritorious objection based on untimeliness for appellate review. *Jones*, 917 F.3d at 581-84. Notably, the Seventh Circuit did not expressly hold that the pretrial amendment hearing was a critical stage. Nor did the Seventh Circuit imply that the ineffective assistance occurred due to trial counsel's inaction at the pretrial amendment hearing or otherwise suggest that this hearing in and of itself was of any particular importance. Instead, the Seventh Circuit found ineffective assistance due to trial counsel's failure to object to amendments at any time and due to its prejudicial effect on the outcome of the direct appeal. *Id.* at 583. In sum, neither *Brewer*, *Rothgery*, nor *Jones* persuade the court that the state court unreasonably determined that the February 2016 hearing was not a critical stage of the proceedings.

B. *Harmless Error Analysis*.

Mr. Brown argues that the state court decision to apply a harmless error analysis rather than presuming prejudice to Mr. Brown's denial of counsel claim was an unreasonable application of *United States v. Cronic,* 466 U.S. 648 (1984). In *Cronic*, the Supreme Court noted that defendants must ordinarily demonstrate some harmful effect on the trial process to demonstrate a violation of the right to effective assistance of counsel. *Id.* at 658. However, the Supreme Court acknowledged that some circumstances

11

"are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.* As examples, the Supreme Court identified the "complete denial of counsel", a complete failure "to subject the prosecution's case to meaningful adversarial testing," and the denial of any opportunity to conduct "an effective cross-examination" as rendering "the adversary process itself presumptively unreliable." *Id.* at 659.

That said, the existence of the right to the assistance of counsel at all critical stages does not mean that a reviewing court must always presume prejudice if it is infringed. In subsequent cases, the Supreme Court has emphasized that the denial of counsel must be "complete" to apply the presumption of prejudice. *See Wright v. Van Patten*, 552 U.S. 120, 125 (2008); *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000). The Supreme Court recently reaffirmed this principle in *Glebe v. Frost*, 574 U.S. 21, 23-24 (2014), holding that the presumption of prejudice applies only when the error "infects the entire trial process and necessarily renders it fundamentally unfair" and that, at most, its prior rulings established only that the "complete denial of summation" requires the presumption of prejudice.

"[T]he *Cronic* exception is exceedingly narrow." *Smith v. Brown*, 764 F.3d 790, 796 (7th Cir. 2014). "In the wake of [*Bell v. Cone*, 535 U.S. 685 (2002)], courts have rarely applied *Cronic*, emphasizing that only non-representation, not poor representation, triggers a presumption of prejudice." *Miller v. Martin*, 481 F.3d 468, 473 (7th Cir. 2007). "*Most* constitutional mistakes call for reversal only if the government cannot demonstrate harmlessness." *Glebe v. Frost*, 574 U.S. 21, 23 (2014).

Upon careful consideration, this court cannot find that the state court made an unreasonable determination of federal law by applying harmless error analysis. Implicit in the state court's reasoning is that trial counsel's absence from the February 2016 hearing did not completely deprive him of his ability to challenge the trial court's ruling on the amended information. Significantly, Indiana law did not require Mr. Brown to challenge the amended indictment at the February 2016 hearing. *See* Ind. Code § 35-34-1-4 (allowing motions to dismiss information within 20 days prior to the omnibus date for certain grounds or any time before or during trial for other grounds); *Gross v. State*, 41 N.E.3d 1043, 1047 (Ind. Ct. App. 2015) ("Trial courts have the inherent authority to dismiss criminal charges where the prosecution of such charges would violate a defendant's constitutional rights."). The record further indicates that trial counsel knew of the proposed amended information before the February 2016 hearing and that he did not challenge the amended information in the five months between that hearing and the trial date. ECF 7-1 at 1-6; ECF 8-2 at 154-58.

On this basis, the court concludes that Mr. Brown's claim more closely resembles scenarios in which federal courts have declined to find a complete denial of counsel. These scenarios include appellate counsel's declining to pursue a direct appeal or a particular argument, *Vinyard v. United States*, 804 F.3d 1218, 1228 (7th Cir. 2015); *Kitchen v. United States*, 227 F.3d 1014, 1021 (7th Cir. 2000); restrictions on trial counsel's summation, *Glebe v. Frost*, 574 U.S. 21, 24 (2014) and restrictions of trial counsel's involvement during an in camera examination of the defendant, *Schmidt v. Foster*, 911 F.3d 469, 481 (7th Cir. 2018). Whether it was error to hold the February 2016 hearing in

13

trial counsel's absence, trial counsel had other opportunities to challenge the amended indictment. It is thus unclear how such error could have infected the entire trial process and rendered it fundamentally unfair, so the court cannot find a complete denial of counsel that would entitle Mr. Brown to a presumption of prejudice.

Moreover, the court does not perceive trial counsel's absence at the February 2016 hearing as a circumstance that is "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified," *Woods v. Donald*, 575 U.S. 312, 318 (2015), or that "prejudice is so likely that case-by-case inquiry into prejudice is not worth the cost," *Kitchen v. United States*, 227 F.3d 1014, 1020 (7th Cir. 2000). The only significant consequence of the February 2016 hearing identified by Mr. Brown was the amended information. Prejudice could be shown though the *Strickland* framework by identifying a meritorious challenge to the information that trial counsel could have made and by showing its probable effect on the outcome of the trial. *See Jones v. Zatecky*, 917 F.3d 578, 582 (7th Cir. 2019); *Shaw v. Wilson*, 721 F.3d 908, 918 (7th Cir. 2013). Mr. Brown's ability to demonstrate prejudice here seems substantially similar to the petitioner's ability in *Kitchen*, 227 F.3d 1014, 1020-22 (7th Cir. 2000), where the Seventh Circuit required the petitioner to demonstrate prejudice "by showing that the omitted issue may have resulted in a reversal of the conviction or an order for a new trial" and declined to apply a presumption of prejudice. *See also Bell v. Cone*, 535 U.S. 685, 697 (2002) ("The aspects of counsel's performance challenged by respondent—the failure to adduce mitigating evidence and the waiver of closing argument—are plainly of the same ilk as other specific

attorney errors we have held subject to *Strickland*'s performance and prejudice components.").

The court further observes that the inability to object to an amended indictment at a particular hearing is not so likely to result in prejudice as to obviate the need for a case-by-case inquiry. Prosecutors often amend charges to which no objections are raised and to which no valid objections could be raised. And, here, trial counsel's opportunity to challenge the indictment both before and after the hearing further diminishes the likelihood of prejudice. Based on the foregoing, the court cannot find that the State court made an unreasonable determination of clearly established federal law by applying harmless error analysis to Mr. Brown's claim.

Next, the court finds that the state court applied the harmless error analysis in a reasonable manner. For errors of constitutional dimension, "an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Rose v. Clark*, 478 U.S. 570, 576 (1986). However, on habeas review, the reviewing court must instead consider whether the constitutional error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).

Notably, Mr. Brown has not demonstrated or even argued on habeas review that trial counsel was deficient for failing to challenge the amended indictment from February 2016. And Mr. Brown makes no other argument specifically identifying how trial counsel's absence at the February 2016 hearing might have affected the outcome of trial.

15

Further, after reviewing the record, the court is unable to identify any likelihood that trial counsel's absence at the February 2016 hearing had an injurious effect on the jury verdict. Trial counsel had ample opportunity to challenge the amended information despite his absence at the February 2016 hearing. Trial counsel also had ample time to prepare a defense to the new charges. Further, on direct appeal, the Indiana Court of Appeals reviewed the objections Mr. Brown could have made before or after the hearing and found that the amendments did not cause him any prejudice. ECF 7-6 at 9-11. Consequently, the court cannot find that trial counsel's absence at the February 2016 hearing had a substantial and injurious effect on the jury's verdict. Because the State court did not unreasonably decide Mr. Brown's denial of counsel claim, it is not a basis for habeas relief.

## CERTIFICATE OF APPEALABILITY

Pursuant to Section 2254 Habeas Corpus Rule 11, the court must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that a reasonable jurist could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons explained in this order, there is no basis for encouraging Mr. Brown to proceed further.

For these reasons, the court DENIES the habeas corpus petition; DENIES a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; and

DIRECTS the clerk to enter judgment in favor of the Respondent and against the Petitioner.

SO ORDERED.

June 24, 2024                                                   *s/ Damon R. Leichty*
                                                                Judge, United States District Court